IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| OMOWALE ASHANTI SHABAZZ, | ) | |
| a/k/a FRED DEAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-1149-JDT-egb |
| | ) | |
| DERRICK SCHOFIELD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER  DENYING MOTION FOR INJUNCTVE RELIEF,
ORDER FOR PARTIAL DISMISSAL, AND
DIRECTING THAT PROCESS BE ISSUED AND SERVED
ON DEFENDANTS GROSS AND LAVENDER

On June 23, 2015, Plaintiff Omowale Ashanti Shabazz, a/k/a Fred Dean, ("Shabazz"),

who is confined in the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee,

filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. § 2000cc *et seq.*, and a motion

for leave to proceed *in forma pauperis*.  (ECF Nos. 1 & 2.)  After submitting the proper

documents, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee

pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b) on June 26, 2015.  (ECF

Nos. 6 & 7.)  The Clerk shall record the defendants as Tennessee Department of Correction

("TDOC") Commissioner Derrick Schofield, NWCX Institutional Warden Michael Parris,

NWCS Chaplain Kurt Gross, and Chaplain First Name Unknown ("FNU") Lavender.[1]   All

defendants are sued in their official and individual capacities.

## I. THE COMPLAINT

Shabazz provides as background that he has been incarcerated since 1995, he was

Muslim prior to incarceration, he informed prison officials of his beliefs during initial

incarceration, and he changed his name in 1997 from Fred Dean to Omowale Ashanti Shabazz,

which has been added to his official TDOC identification.  (Compl. at ¶¶ 10-16, ECF No. 1.)

Shabazz alleges that he has used his legally changed name on various prison documents since

1997.  (*Id*.at ¶ 17.)  When Shabazz arrived at NWCX, he was informed that he would have to use

both names on grievance forms and all internal documents although he contends there is no

TDOC or NWCX policy requiring that process.  (*Id.* at ¶ 24.)

On August 3, 2014, Shabazz asked for an alternative to the pork sausage served for

breakfast and was told that he could have additional grits or gravy instead of the sausage.  (*Id* at

¶¶ 26-29.)  Shabazz is a Muslim who does not eat pork and is anemic requiring substantial

protein.  (*Id.* at ¶ 30.)   Shabazz is not being provided alternative protein when pork items are

served which, he contends, places his health in imminent danger of physical harm.  (*Id.* at ¶ 33.)

Shabazz filed a grievance in the matter and was informed that an inmate may request a

vegetarian menu by submitting an Inmate Inquiry-Inforamtion Request to his unit manager or

iinmates may be approved for religious meals by submitting a request through the Chaplain.  (*Id.*

at ¶¶ 34 & 35, *see also* ECF no 1-3.)

---

[1]Though not included in the list of defendants on the first page of Shabazz's complaint, it is clear he wishes to include Chaplain FNU Lavender as a defendant.  The Clerk is DIRECTED to add Defendant Lavender to the list of defendants in this matter.

On April 13, 2014, Shabazz went to the Chaplain's office to ask for a religious diet, but was refused by Defendants Gross and Lavender because he did not sign his name as Fred Dean. (*Id.* at ¶¶ 36-37.) Shabazz filed a grievance about the incident, but Grievance Chairperson Janet Gillihan, who is not a party to this compliant, refused to process the grievance unless Shabazz used the name Fred Dean. (*Id.* at ¶ 38.) On August 29, 2014, Shabazz sent an Information Request Form to Unit Manager Gross for a diet conforming to his religion. (*Id.* at ¶ 40.) The form was forwarded to the Chaplian's officice, but Shabazz has not received a response and is still being denied a substitute for pork protein. (*Id.* at ¶¶ 41-44.) Shabazz alleges that he has lost forty pounds since arriving at NWCX. (*Id.* at ¶ 44.)

Shabazz contends that he is not required to use both names on internal documents and that prison officials are misapplying TDOC policy. (*Id.* at ¶¶ 45-51.) Shabazz, citing various TDOC polices, further alleges that Defendants are punishing him for not complying with a "non-existent policy, rule, and/or regulation" forcing him to use the name Fred Dean on internal documents. (*Id.* at ¶ 60.)

On March 24, 2015, Shabazz filed another grievance about not receiving a religious diet. (*Id.* at ¶ 63.) On May 30, 2015, Shabazz sent a request to Defendant Gross to participate in Ramadan; however, Defendant Gross refused the request because it did not include the name Fred Dean. (*Id.* at ¶ ¶ 64-65.) On June 4, 2015, Shabazz attempted, again, to participate in Ramadan, signing both names to the request, but was again refused because Defendant Gross could not read Shabazz's committed name (Fred Dean). (*Id.* at ¶ ¶ 67-68.) On June 16, 2015, Shabazz attempted to go through medical to have his religious diet during the non-fasting times of Ramadan, but was told that request would need to go through the Chaplain who had already refused Shabazz. (*Id.* at ¶ ¶ 69-72.) Shabazz fasted to the best of his ability. (*Id.* at ¶ 74.)

Shabazz contends that the Qur'an forbids Muslims to be called by any nicknames and that, since his name has been legally changed, his birth name is no more than a nickname which he refuses to use unless, "it is specifically required by a written rule, policy, and/or procedure." (*Id.* at ¶ ¶ 76-77.)

Shabazz alleges that Defendants Gross and Lavender are depriving him of his religious diet based on a "non-existent rule, regulation, and/or policy," and continue to violate his First and Fourteenth Amendment rights. (*Id.* at ¶¶ 79 & 83.) Shabazz contends that Defendant Parris "knows of/or and has acquiesced" the violation of Shabazz's First Amendment rights and has allowed his subordinates to violate Shabazz's equal protection rights, RLUIPA rights, and First Amendment rights. (*Id.* at ¶ 80.) Further Defendants Parris, Gross, and Lavender have conspired together to violate his First and Fourteenth Amendment rights. (*Id.* at ¶ 84.) Additionally, Shabazz alleges the Defendant Schofield has a policy or custom of disregarding the rights of prisoners and of allowing his subordinates to violate the constitutional rights of prisoners. (*Id.* at ¶¶ 81-82.)

Shabazz seeks an injunction to order Defendants to provide him with a diet that conforms to his religion and health needs as well as provide costs associated with bringing this action.

On June 23, 2015, Shabazz filed a Motion for Injunction Relief seeking the court order the defendants to cease denying him a diet that "conforms with the dictates of his religion and which is nutritionally adequate for a person who is anemic." (Mtn. for Injunctive Relief at 2, ECF No. 3.) In analyzing a motion for preliminary injunctive relief, this Court must balance the following factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Newsom v. Norris*, 888 F.2d 371, 373 (6th Cir. 1989)(citations omitted). A court is required to "make specific findings of fact concerning each of these four factors, unless fewer are dispositive." *Glover v. Johnson*, 855 F.2d 277, 282 (6th Cir. 1988)(citations omitted). Shabazz's Motion is not in the form of an affidavit and does not certify that notice has been given to the opposing parties. Fed. R. Civ. P. 65. The motion is DENIED.

## II. ANALYSIS

A.      Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in

original).  "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally.  Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted."  *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief.  Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915).  Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.  *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a

plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    § 1983 Claim

Shabazz filed his complaint pursuant to actions under 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a

defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

        1.        *Claims Defendants in their Official Capacity/ State of Tennessee*

Claims against Defendants in their official capacity are properly asserted against their employer, the State of Tennessee. Shabazz cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)..

        2.        *Claims against Defendants Schofield and Parris as Supervisors*

Defendants Schofield and Parris cannot be held liable as supervisors. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996); *see also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Therefore, Defendant Parris cannot be sued because to failed to take corrective action in response to Plaintiff's grievance. Defendants Schofield and Parris also cannot be sued because any of his subordinates violated Shabazz's rights.

3.    *Claims for Denial of Religious Diet (1ˢᵗ Amendment and RLUIPA)*

"Inmates clearly retain protections afforded by the First Amendment . . . , including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*,

482 U.S. 342, 348 (1987) (citation omitted). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (internal quotation marks, alteration and citation omitted); *see also Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). Thus, "when a prison regulation imposes on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987), and is not an "exaggerated response to such objectives,'" *id.* (internal quotation marks omitted); *see also Overton*, 539 U.S. at 132.

In this case, Shabazz complains that the Jail has refused to serve him an appropriate protein supplement when pork is served as well as refuse to allow him to eat within the time period allowed during Ramadan. "Prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander*, 31 F. App'x at 179 (collecting cases).

Plaintiff has the right to a nutritionally adequate diet that does not require him to consume pork. The complaint alleges that Shabazz has requested non-pork meat or protein, he is being denied that request, and that he is losing weight.

Shabazz also states his claim as a violation of the RLUIPA.  The RLUIPA provides, in

pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution, as defined in section 1997 of this
> title, even if the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that person—
>
> > (1)     is in furtherance of a compelling governmental interest; and
>
> > (2)     is the least restrictive means of furthering that compelling
> > governmental interest.

42 U.S.C. § 2000cc-1(a).  The Court of Appeals has set forth the standard for evaluating an

inmate's claim under the RLUIPA:

> An inmate asserting a claim under the RLUIPA must first produce prima
> facie evidence demonstrating that his religious exercise was substantially
> burdened.  See § 2000cc-2(b).  An action of a prison official will be classified as a
> substantial burden when that action forced an individual to choose between
> following the precepts of his religion and forfeiting benefits or when the action in
> question placed substantial pressure on an adherent to modify his behavior and to
> violate his beliefs.
>
> The government then bears the burden of persuasion to prove that any
> substantial burden on the inmate's exercise of his religious beliefs was "in
> furtherance of a compelling governmental interest" and imposition of the
> substantial burden on the inmate is "the least restrictive means of furthering that
> compelling governmental interest."  §§ 2000cc–2(b), 2000cc–1(a)(1)–(2).  If a
> substantial burden on religion is found, the RLUIPA employs a less deferential
> standard—the least restrictive means of furthering a compelling governmental
> interest—than the standard applied to religious exercise First Amendment claims,
> a uniform rule having a reasonable relation to legitimate penological interests.

*Hayes v. Tennessee,* 424 F. App'x 546, 554-55 (6th Cir. 2011) (internal quotation marks,

alteration and additional citations omitted).

The Court will assume that a pork-free diet is a "religious exercise" within the meaning

of the RLUIPA.  The term "religious exercise" "includes any exercise of religion, whether or not

compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Thus, the

"RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's

religion," but it "does not preclude inquiry into the sincerity of a prisoner's professed

religiosity."  *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).  The Court will also assume

that Plaintiff's desire for a pork-free diet is sincere.

The Sixth Circuit has addressed the standard for determining whether a governmental

policy or practice substantially burdens the exercise of religion only in the zoning context,[2]

where it stated as follows:

> The U.S. Supreme Court has not yet defined "substantial burden" as it
> applies to RLUIPA.  Neither does the statute itself contain any definition of the
> term.    The statute's legislative history, however, indicates that the "term
> 'substantial burden' as used in this Act is not intended to be given any broader
> interpretation than the Supreme Court's articulation of the concept of substantial
> burden or [sic] religious exercise."  146 Cong. Rec. S7774-01, 7776 (daily ed.
> July 27, 2000) (joint statement of Sens. Hatch and Kennedy).
>
> . . . .
>
> In short, while the Supreme Court generally has found that a government's
> action constituted a substantial burden on an individual's free exercise of religion
> when that action forced an individual to choose between "following the precepts
> of her religion and forfeiting benefits" or when the action in question placed
> "substantial pressure on an adherent to modify his behavior and to violate his
> beliefs," *Sherbert[ v. Verner*, 374 U.S. 398, 404 (1963)]; *Thomas[ v. Review Bd.
> of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)], it has found no
> substantial burden when, although the action encumbered the practice of religion,
> it did not pressure the individual to violate his or her religious beliefs.  *See Lyng[
> v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)]; *Braunfeld[
> v. Brown*, 366 U.S. 599, 605-06 (1961); *see also Episcopal Student Found. v. City
> of Ann Arbor*, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004) ("[C]ourts have been
> far more reluctant to find a violation where compliance with the challenged
> regulation makes the practice of one's religion more difficult or expensive, but the
> regulation is not inherently inconsistent with the litigant's beliefs.").*Living Water
> Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-35 (6th Cir.

---

[2]The  statutory  provision  concerning  land  use  regulations,  found  at  42  U.S.C.  §
2000cc(a)(1), is, on its face, similar to the provision concerning prisoners, found at 42 U.S.C. §
2000cc-1(a)(1).

2007); *see also Barhite v. Caruso,* 377 F. App'x 508, 511 (6th Cir. 2010) (applying *Living Water* standard to prisoner's RLUIPA claim).[3]

A prison does not impose a substantial burden on a Muslim inmate's exercise of his religion where he has an alternative to eating non-halal meat. *See, e.g., Cloyd,*, 2012 WL 5995234, at \*4 ("[A]s long as a plaintiff is giving an alternative to eating non-halal meat, he does not suffer a 'substantial burden' to his religious beliefs under the RLUIPA."); *Hudson v. Caruso,* 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) ("Furthermore, there is no 'substantial burden' to plaintiff's religious beliefs under RLUIPA, because they are given alternatives to eating non-halal meat. While plaintiffs may want to have halal meat entrees rather than vegetarian entrees and non-meat substitutes, their food preferences, as prisoners, are limited.") (citations omitted); *cf. Heard v. Caruso*, 351 F. App'x 1, 10 (6th Cir. 2009) ("If Heard's religion requires adherence to a Nation-of-Islam diet, prison officials' refusal to accommodate this diet would impose a substantial burden.").

Shabazz has alleged a plausible claim for violation of the First Amendment and the RLUIPA against Defendants Gross and Lavender.

III.  CONCLUSION

The Court DISMISSES Shabazz's complaint against Defendants Schofield and Parris for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Process will be issued for Defendants Gross and Lavender on Shabazz's Frist Amendment and RLUIPA claim.

---

[3]*See also Living Water*, 258 F. App'x at 737 ("We decline to set a bright line test by which to 'measure' a substantial burden and, instead, look for a framework to apply to the facts before us.  To that end, we find the following consideration helpful:  though the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion?").

It is ORDERED that the Clerk shall issue process for Defendants Gross and Lavender and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Gross and Lavender pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Shabazz shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Gross and Lavender or on any unrepresented Defendant. Shabazz shall make a certificate of service on every document filed. Shabazz shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Shabazz shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                    **s/James D. Todd**
                                    JAMES D. TODD
                                    UNITED STATES DISTRICT JUDGE

---

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.